**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Action No. 14-673 (JLL) |
| v. | |
| CARNIE MONTS, | **OPINION** |
| Defendant. | |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendant's motion to suppress the evidence derived from his arrest during the early morning of May 4, 2014. (ECF No. 25). Specifically, Defendant seeks an order barring the Government from introducing into evidence a firearm recovered by members of the Patterson Police Department on the morning in question.[1] The Government has opposed this motion (ECF No. 25-1). On September 14, 2016, the Court held an evidentiary hearing with respect to the admissibility of the firearm. (ECF No. 39). For the reasons stated herein, the Court denies Defendant's motion to suppress the firearm.

I.   **Factual Background**[2]

On May 4, 2014, Detectives Aramis Alba, Roberto Orozco and Francisco Brito, and Sergeant Anthony Hyatt, all members of the Patterson, New Jersey Police Department, were utilizing an

---

[1] This Court has already denied Defendant's motion with respect to the CDS, because Defendant had "not established than an unlawful search or seizure preceded the recovery of the CDS, nor ha[d] he argued that he had a privacy interest in the location or property where the Police recovered the CDS." (ECF No. 29). Accordingly, the only issue before the Court is the admissibility of the firearm recovered on the morning in question.

[2] The facts as stated herein are taken from the testimony that the Court heard at oral argument as well as the submissions filed by Defendant and the Government in connection with this motion.

1

unmarked Police vehicle while patrolling a high-crime area of Patterson. (ECF No. 25, Exh. A (Police Report)). At around 2:45 a.m., the Police observed Defendant Monts and an unknown male standing in front of 229 Rosa Parks Boulevard. (*Id.*; Tr. at 24:17-18). The Police stopped and exited their vehicle to issue a summons to the men for obstructing a public passage. (Tr. at 24:17-21).

While the Police were approaching the men, Detective Brito "noticed that one of the males [later identified as Mr. Monts] discarded an unknown item to the ground." (*Id.* at 25:15-17). Detective Brito testified that "[a]s [the Detectives] got closer to Mr. Monts and after he dropped the item, he started running." (*Id.* at 26:1-2). At that point, Detective Brito began chasing Mr. Monts on foot. (*Id.* at 26:3-4). Detective Brito testified that he told Mr. Monts "Stop, stop, police." (*Id.* at 26:4-6). Detective Brito testified further that Mr. Monts continued running for about one block, and that he eventually ran into the backyard of a home located at 151 Rosa Parks Boulevard. (*Id.* at 29:3-11).

When Detective Brito arrived at the backyard, he and Detective Alba "tackled Mr. Monts to the ground." (*Id.* at 29:12-20). According to Detective Brito's testimony, he "assisted in handcuffing Mr. Monts, and [] removed a firearm from the left side of [Defendant's] waistband." (*Id.* at 29:21-22).

Defendant now moves to suppress the firearm recovered from his person in the backyard of 151 Rosa Parks Boulevard. Specifically, Defendant argues that the firearm was the fruit of an unlawful Fourth Amendment search because the Police lacked the requisite probable cause to effectuate the arrest. (Def.'s Br. at 3). According to Defendant, he was not in possession of CDS that morning, and he ran from the Police because he did not know that the Detectives were Police

at the time and, given that the area was known for criminal activity, he did not "want[] to wait around to find out what the people in the car wanted." (Def.'s Br., Exh. B (Def.'s Aff.) ¶¶ 2-3).

After reviewing the papers filed in support of and in opposition to Defendant's motion, the Court determined that there were disputed factual issues bearing upon Defendant's allegations that the Detectives lacked probable cause to effectuate an arrest. (ECF No. 29). To that end, the Court ordered an evidentiary hearing to determine: (1) whether the Police witnessed Defendant discard a bag containing CDS prior to running from the Police, and; (2) the point of time at which Defendant became aware that the plain-clothed Police were, in fact, Police. (*Id.*).

## II.     Legal Standard

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. To prevail on a motion to suppress, a defendant generally bears the burden of proving that the challenged search or seizure was unreasonable under the Fourth Amendment. *See United States v. Acosta,* 965 F.2d 1248, 1256 n. 9 (3d Cir. 1992) ("The proponent of a motion to suppress has the burden of establishing that his Fourth Amendment rights were violated."). However, when a search is conducted without a warrant, as is the case here, the burden shifts to the Government to demonstrate by a preponderance of the evidence that the warrantless search did not run afoul of the Fourth Amendment. *See, e.g., United States v. Johnson,* 63 F.3d 242, 245 (3d Cir.1995).

## III.    Discussion

The issue before the Court is whether the Detectives who arrested Mr. Monts during the early morning of May 4, 2014, had probable cause to effectuate that arrest. If the Detectives did not have probable cause, then the firearm that they allege to have recovered off of Mr. Monts'

3

person will be inadmissible at trial as the fruit of an unconstitutional search. On the other hand, if the Court determines that the Detectives had the requisite probable cause to effectuate the arrest, then the Court will not grant Defendant's motion to suppress that firearm.

The Fourth Amendment requires that an arrest be based on probable cause. *See Paff v. Kaltenbach*, 204 F.3d 425, 435 (3d Cir. 2000). "Probable cause to arrest exists when the information within the arresting officer's knowledge at the time of the arrest is sufficient to warrant a reasonable law enforcement officer to believe that an offense has been or is being committed by the person to be arrested." *See id.* at 436. "While probable cause to arrest requires more than mere suspicion, the law recognizes that probable cause determinations have to be made on the spot under pressure and do not require the fine resolution of conflicting evidence required at trial." *United States v. Navedo*, 694 F.3d 463, 467 (3d Cir. 2012) (internal quotation marks and citations omitted). Courts use a totality of the circumstances analysis to determine whether an arrest was properly based on probable cause. *See Maryland v. Pringle*, 540 U.S. 366, 371 (2003).

Defendant argues that the firearm recovered on the morning in question was the fruit of an unlawful Fourth Amendment search because the Police lacked the requisite probable cause to effectuate the arrest. (Def.'s Br. at 3). According to Defendant, he was not in possession of CDS that morning, and he ran from the Police because he did not know that the Detectives were Police at the time and, given that the area was known for criminal activity, he did not "want[] to wait around to find out what the people in the car wanted." (Def.'s Br., Exh. B (Def.'s Aff.) ¶¶ 2-3).

After reviewing the papers filed in support of and in opposition to Defendant's motion, the Court determined that there were disputed factual issues bearing upon Defendant's allegations that the Detectives lacked probable cause to effectuate an arrest. (ECF No. 29). To that end, the Court ordered an evidentiary hearing to determine: (1) whether the Police witnessed Defendant discard

4

a bag containing CDS prior to running from the Police, and; (2) the point of time at which Defendant became aware that the plain-clothed Police were, in fact, Police. (*Id.*).

On September 14, 2016, the Court held an evidentiary hearing with respect to these issues. At the hearing, the Government offered the testimony of Detectives Brito and Orozco (collectively "the Detectives"), and Defendant offered the testimony of Sergeant Hyatt. Having listened to the testimony of Detectives Brito and Orozco and Sergeant Hyatt, and having observed their demeanors during the course of their testimony, the Court finds this testimony to be credible.

The Detectives testified that that on the night in question, they were patrolling the City of Patterson, New Jersey when, at about 2:45 a.m., they observed Defendant and an unknown male standing in front of 229 Rosa Parks Boulevard. (*Id.* at 48:10-13, 49:18-21). It is undisputed that this location "is known for violent crime, including robberies." (*Id.*; *see also* Def.'s Aff. ¶ 3).

The Detectives testified that they were utilizing an unmarked (although not "undercover") black SUV with tinted windows. The vehicle contains lights and sirens on the inside that are not visible from the outside. (Tr. at 14:22-15:7; *id.* at 21:7-13, 44:9-17). The Detectives also testified that when they exited the vehicle to approach Defendant and the other male, they were wearing civilian clothing beneath police-issued bullet proof vests. (*Id.* at 16:20-19:2, 46:11-47:3). Detective Brito testified that on the morning in question he was also wearing his Detective badge that would identify him as a Police Officer. (*Id.* at 20:15-21:2). This testimony, which the Court deems credible, belies Defendant's representations that he did not know the Police were chasing him and that he ran to avoid confrontation with unknown individuals.

The Court likewise credits the Detectives' testimony with respect to the issue of the CDS. Detective Brito testified that when he exited the vehicle, he observed Defendant "discard[] an unknown item onto the ground." (*Id.* at 25:15-17). Detective Orozco's testimony is consistent

with that of Detective Brito. Although Detective Orozco did not personally see Defendant drop something to the ground, he testified that as he was exiting the vehicle, he "heard someone say, 'He dropped something.'" (*Id.* at 50:8-11). Thereafter, Detective Orozco observed a bag on the ground, which, according to Detective Orozco's testimony, contained "glassine envelopes, which are commonly used to package heroin." (*Id.* at 50:16-18).

When considering the totality of the circumstances of the morning in question, the Court finds that the Police had probable cause to effectuate Defendant's arrest. First, it is undisputed that Defendant was observed at a location known for criminal activity in the very early hours of the morning. Second, the Court credits Detective Brito's testimony that he observed Defendant throw a bag containing CDS to the ground. Third, Defendant ran from the Police, notwithstanding the fact that the Detectives had identified themselves as law enforcement. Based upon a totality of the circumstances, the Court is satisfied that "the information within the arresting officer[s'] knowledge at the time of the arrest [was] sufficient to warrant a reasonable law enforcement officer to believe that an offense ha[d] been or [was] being committed by the person to be arrested." *Paff*, 204 F.3d at 435. Accordingly, Defendant's motion to suppress is denied.

### IV.  Conclusion

For the reasons stated herein, the Court denies Defendant's motion to suppress. An appropriate Order accompanies this Opinion.

IT IS SO ORDERED.

DATED:   September 19, 2016

_____
JOSE L. LINARES, U.S.D.J.

6